**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**FAOUZI JABER,**

       **Plaintiff,**

**v.**                                    **CIVIL ACTION NO.: 3:23-CV-97
(GROH)**

**UNITED STATES OF AMERICA,**

       **Defendant.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On April 7, 2023, the *pro se* Plaintiff, a federal prisoner currently incarcerated at Gilmer FCI, in Glenville, West Virginia, initiated this case by filing an action pursuant to the Federal Tort Claims Act. ECF No. 1.[1] The Plaintiff claims he is entitled to damages pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, for acts which allegedly occurred at FCI Hazelton in the Northern District of West Virginia. Id. The Plaintiff paid the filing fee on May 8, 2023. ECF No. 8.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the petition be denied and dismissed without prejudice.

---

[1] All CM/ECF numbers cited herein are from the instant case, 3:23-CV-97, unless otherwise noted.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   The Complaint

The Plaintiff's complaint filed on April 7, 2023, alleges that the Defendant's employees at the Bureau of Prisons ("BOP") committed various acts of misconduct and violations of duty, including: (1) failure to protect the Plaintiff while he was in custody, from being robbed by another inmate, and the "negligence of BOP staff was the proximate [cause] of the injury sustained." [ECF No. 1 at 6–7]; (2) failure to ensure the Plaintiff was free from cruel and unusual punishment, and thereby proximately caused the Plaintiff's personal property to become damaged or stolen, and inflicted undue stress on the Plaintiff who had preexisting "heart problems and high blood pressure" [Id. at 7–8]; (3) violated the Plaintiff's "right to be free from [d]iscrimination," based on the Plaintiff's political ties, and religion [Id. at 9–10]; (4) failed to protect the Plaintiff from another inmate, which constituted "willful endangerment" of the Plaintiff, as demonstrated by "staff's refusal to investigate" or otherwise prevent that other inmate from damaging or destroying the Plaintiff's personal property [Id. at 10–11]; and (5) failed to report misconduct of BOP staff to supervisors, including staff's failure to investigate the theft of the Plaintiff's personal property [Id. at 11–12].

Attached to the complaint, are copies of documents related to the Plaintiff's attempts to exhaust his administrative remedies, including:

(1)   A "Claim for Damage, Injury, or Death," Form 1105-008, submitted to the BOP Mid-Atlantic Regional Office, for the January 28, 2023, locker break-in and resultant stolen property, alternatively valued by the Plaintiff at "around 2,000 dollars" and "around 2,500 [d]ollars" [ECF No. 1-1 at 3];

(2)     A February 24, 2023, letter from the BOP Mid-Atlantic Regional Office regarding Administrative Claim Number TRT-MXR-2023-03010, which denied the Plaintiff's claim based on his failure "to reveal that [he] suffered a compensable property damage due to the negligence of a government employee acting within the scope of employment," and which further directed the Plaintiff to file suit in the appropriate U.S. District Court not later than six months after the date of the letter [ECF No. 1-2 at 2];

(3)     An undated handwritten document titled "Operations Memorandum," numbered 151-90, accompanied by an untitled typewritten document related to "APHA environmental standards," and the mandate that "[i]t is incumbent on the incarcerating body to provide the individual with a healthy habilitative environment." [ECF No. 1-3]. The Plaintiff underlined a sentence in this document which reads, "Persons are sent to prison as punishment, not *for* punishment." [Id. (emphasis in original)]; and

(4)     A "Request for Administrative Remedy Informal Resolution Form,"[2] dated February 15, 2023, which requests "staff members to be held accountable for not adequately responding to inmate's request for assistance [ ] and having his items returned promptly," and a "Request for Administrative Remedy"[3] form executed by the Plaintiff on March 6, 2023, which asks that "all staff involved be held criminally liable," and that he be reimbursed $2,500.00 for his stolen property [ECF No. 1-4 at 2–3].

The Plaintiff contends that he "suffered emotional and psychological trauma" and the loss of personal property. ECF No. 1 at 14. More specifically, the Plaintiff asserts that he "suffer[s] from major heart problems . . . [and] this incident caused [undue] stress and anxiety to [his] heart[ ] . . . and increased blood pressure." Id. For relief, the Plaintiff

---

[2] This document is the Bureau of Prisons BP-8 form.

[3] This document is the Bureau of Prisons BP-9 Form.

3

seeks $2,500.00 for the "tangible items lost." Id.

**B.     The Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment**

On September 11, 2023, the Defendant filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, along with a memorandum and exhibits in support thereof. ECF Nos. 22, 22-1 through 22-6. The Defendant argues that the United States has not waived sovereign immunity for the Plaintiff's property loss claims, and more specifically contends that: (1) the Plaintiff's claim regarding the theft of personal property is subject to the detention of goods exception of the FTCA [ECF No. 22-1 at 6–8]; and (2) "although the Plaintiff has no remedy under the FTCA, he can pursue his claims appropriately for property loss to the extent it was 'caused by the negligence of an officer or employee of the United States Government acting within the scope of their employment,' under 31 U.S.C. § 3723," [Id. at 8].

Attached to the Defendant's memorandum are the following exhibits:

(1)      Declaration of Misty Shaw, a paralegal at the Mid-Atlantic Regional Office of the BOP, executed on September 11, 2023, [ECF No. 22-2];

(2)      "Public Information Inmate Data" for the Plaintiff, dated July 11, 2023, [ECF No. 22-3];

(3)      "Inmate History Adm-Rel" for the Plaintiff, dated July 11, 2023, [ECF No. 22-4];

(4)      "Claim for Damage, Injury, or Death," form, prepared by the Plaintiff and stamped "received" on February 16, 2023, [ECF No. 22-5];

(5)      "Male Custody Classification Form," for the Plaintiff, dated August 12, 2022, [ECF No. 22-5 at 5];

(6)     Multiple "Sales Invoices"[4] from Hazelton USP, dated October 27, 2021, December 1, 2021, December 16, 2021, November 10, 2021, November 7, 2022, December 6, 2022, December 20, 2022, October 24, 2022,[5] January 5, 2023, July 21, 2022, August 17, 2022, August 11, 2022, and January 19, 2023 [Id. at 6–25].

### C.     The Plaintiff's Motion Filed September 29, 2023, and Related Pleadings

On September 29, 2023, the Plaintiff filed a "Motion Pursuant to the Reimbursement of Property, Pursuant to Officials of the BOP negligence according to 31 U.S.C. § 3723." ECF No. 27. The Defendant filed a response to the Plaintiff's Motion Pursuant to Reimbursement of Property, Pursuant to Officials of the B.O.P Negligence According to 31 U.S.C. § 3723, on October 13, 2023.[6] ECF No. 28. Therein, the Defendant asserts that the Plaintiff "may appropriately pursue his claim under 31 U.S.C. § 3723 and the BOP's appeal procedure for property losses. Staff will then investigation his claim and provide him with a response." ECF No. 28 at 2. Further, the Defendant contends that Plaintiff's response "is an attempt to file a claim under 31 U.S.C. § 3723

---

[4] The Defendant provides no explanation for the relevance of the Sales Invoices. Further, no explanation for their relevance is contained in the Motion to Dismiss or, Alternatively, for Summary Judgment, the memorandum in support, or the declaration by the BOP paralegal. A review of the Sales Invoices shows that a number of itemized commissary purchases are underlined or otherwise marked. Those demarcations lead the undersigned to surmise that the marked items are possibly intended to value the property the Plaintiff claims was stolen. However, the total value of the demarcated items is $567.70.

[5] There are three separate Sales Invoices dated October 24, 2022, one at 10:46:52 hours [ECF Nos 22-5 at 16], a second at 10:33:25 hours [Id. at 17], and a third at 10:37:29 hours [Id. at 18].

[6] Although the docket states that the Defendant filed a "REPLY to Response to Motion re [ECF No.] 27 MOTION Pursuant to Reimbursement of Property, Pursuant to Officials of the B.O.P. Negligence according to 31 U.S.C. § 3723 filed by United States of America," a review of that Reply shows that it is instead titled, "Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment." ECF No. 28. However, a review of the Defendant's pleading shows that it is more properly considered as a reply to the Plaintiff's September 29, 2023, motion, and as notated on the docket.

with the Court," without regard "to how the process works." Id. The Defendant also argues that "there is no judicial review mechanism for claims decided under § 3723." Id. at 3. The Defendant asserts that the Plaintiff's complaint should be dismissed. Id.

By order entered February 7, 2024, the Plaintiff's "Motion Pursuant to the Reimbursement of Property, Pursuant to Officials of the BOP negligence according to 31 U.S.C. § 3723," was denied as premature. ECF No. 36.

### D. The Plaintiff's Response in Opposition to the Motion to Dismiss or for Summary Judgment

The Plaintiff filed a response in opposition to the Defendant's Motion to Dismiss or in the Alternative for Summary Judgment on October 27, 2023. ECF No. 29. Therein, the Plaintiff argues that the Government is estopped from asserting the defense of sovereign immunity because when the BOP's Mid-Atlantic Regional Office denied his administrative remedy on February 24, 2023, the denial letter "failed to assert" sovereign immunity as a defense to the Plaintiff's claim. Id. at 1 – 2. Attached to the Plaintiff's response are copies of: (1) the February 24, 2023, denial letter [ECF No. 29-1]; (2) a document titled "Motion Pursuant to the Reimbursement of Property, Pursuant to officials of the BOP Negligence According to 31 U.S.C. § 3723" dated September 19, 2023[7] [ECF No. 29-2]; (3) a duplicate copy of the "Motion Pursuant to the Reimbursement of Property, Pursuant to officials of the BOP Negligence According to 31 U.S.C. § 3723," [ECF No. 29-3]; and (4) BOP form titled "Small Claims for Property Damage of Loss (31 U.S.C. § 3723)," executed by the Plaintiff on October 19, 2023 [ECF No. 29-4].

### E. Further Pleadings

On November 30, 2023, the Plaintiff filed a document styled, "Motion to Hold in

---

[7] This document was previously filed as ECF No. 27 on September 29, 2023.

Abeyance," [ECF No. 27] which requests that the Court:

> Suspend[ ] further procedural steps . . . for a period of six months while the Defendant agency considers the administrative claim which the plaintiff submitted in accordance with the defendant's pleadings filed in this matter. The pending claim number is TRT-MXR-2024-00590, which was received by the Office of the Regional Counsel, for the Mid-Atlantic Regional, Bureau of Prisons, Department of Justice, on October 23, 2023.

ECF No. 30. Attached thereto is an undated letter from the Regional Counsel for the BOP Mid-Atlantic Region, which acknowledges the receipt of the Plaintiff's administrative claim for the "alleged loss of personal property or personal injury suffered at FCC Hazelton." ECF No. 30-1.

On February 6, 2024, the Plaintiff filed a letter with exhibits. ECF No. 34. The letter asserts that enclosed is a lawsuit alleging a cause of action under the Civil Rights Act. None of the enclosures is a lawsuit.[8] ECF Nos. 34-1 through 34-5.

### F.    Chronological Administrative Remedy History[9]

As exhibits to various pleadings, the parties filed copies of the following attempts by the Plaintiff to file administrative remedies:

(1)    A February 15, 2023, Informal Resolution Form for a Request for

---

[8] Instead, those exhibits are: (1) a letter to the Attorney General dated January 31, 2024 [ECF No. 34-1]; (2) an "Inmate Request to Staff Member Response" dated December 20, 2021 [ECF No. 34-2]; (3) a January 18, 2022, letter from the Office of the Inspector General for the Department of Justice, related to allegations of misconduct by employees and contractors of DOJ [ECF No. 34-3 at 1]; (4) an October 26, 2017, letter from the warden of the New York City Metropolitan Correctional Center to the Honorable Colleen McMahon, related to the Plaintiff's upcoming sentencing in the Southern District of New York, case number 1:13-CR-485 [Id. at 2]; (5) an undated seven-page handwritten letter from the Plaintiff addressed to Senator Richard Dur[bin], Chairman of the Senate Judiciary Committee [ECF No. 34-4 at 1–5; (6) a two-page letter dated November 25, 2021, from the Plaintiff addressed to the Attorney General [Id. at 6–7]; and a ten-page handwritten letter dated November 23, 2021, to Judge McMahon in the Southern District of New York [ECF No. 34-5].

[9] Although several of these administrative remedy documents are listed above in the discussion of the parties' filings, this chronological summary of the Plaintiff's administrative remedy history is more instructive.

Administrative Remedy (BP-8), related to the Plaintiff's claim that another inmate stole his personal property on January 28, 2023, and request for return of that property [ECF No. 1-4 at 2];

(2)    A February 24, 2023, denial by the Mid-Atlantic Regional Counsel of the Plaintiff's Administrative remedy TRT-MXR-2023-03010, related to his claim that another inmate stole his personal property on January 28, 2023, and request for $2,500.00 in compensatory damages [ECF Nos. 1-2 at 2, 22-6, 29-1, 30-1 at 2]. The denial advises the Plaintiff that if he is not satisfied with the determination, he "may file suit in the appropriate U.S. District Court not later than six months after the date of this letter." [Id.];

(3)    A March 6, 2023, Request for Administrative Remedy (BP-9), related to the Plaintiff's claim that another inmate stole his personal property on January 28, 2023, and request for $2,500.00 in compensatory damages [ECF No. 1-4 at 3];

(4)    An undated Standard Form 95, "Claim for Damage, Injury, or Death" filed with the Mid-Atlantic Regional Office related to the Plaintiff's claim that on January 28, 2023, his personal belongings were stolen by another inmate. The two typewritten pages attached to the Standard Form 95 are signed and dated April 4, 2023 [ECF No. 1-1 at 2];

(5)    A BP-A0943 form for "Small Claims for Property Damage or Loss (31 U.S.C § 3723)" signed by the Plaintiff on October 19, 2023, seeking $2,500.00 for the January 28, 2023, theft of his property by another inmate [ECF No. 29-4];

(6)     An undated letter from the Mid-Atlantic Regional Counsel related to Claim number TRT-MXR-2024-00590, which was received on October 23, 2023, and which seeks $2,500.00 for the "alleged loss of personal property or personal injury suffered at FCC Hazelton." [ECF No. 30-1 at 1];

(7)     A February 12, 2024, letter from the Mid-Atlantic Regional Counsel related to Claim number TRT-MXR-2024-00590, which documents that the Plaintiff's claim for $2,500 in damages was denied, then upon the Plaintiff's request, was reconsidered under 31 U.S.C. § 3723 [ECF No. 38-1 at 1]. Further, the reconsidered claim was denied because the Plaintiff "failed to provide new evidence showing BOP staff were negligent in handling [his] property." Id. The letter concludes that, "[t]his is the final review of your claim, and there is no judicial review for claims decided pursuant to 31 U.S.C. § 3723." Id.; and

(8)     A February 12, 2024, letter from the Mid-Atlantic Regional Counsel related to Claim number TRT-MXR-2023-07485, which denied the Plaintiff's request for $2,500 in property loss and $5,000,000.00 for personal injury [ECF No. 38-1 at 2]. The letter further confirms that the Plaintiff, "previously filed two claims regarding stolen personal property. A review of TRT-MXR-2023-03010 revealed you alleged inmates stole your personal property on January 28, 2023, and you sought monetary relief for $2,500.00. TRT-MXR-2024-00590 addressed allegedly stolen property on April 28, 2023. Both of these claims were denied." Id. Again, the Plaintiff was advised that he cannot file suit in the United States District Court "as there is no judicial

review for claims decided pursuant to 31 U.S.C. § 3723." Id.

## III.   LEGAL STANDARD

### A.   Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, a complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[10] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

### B.   Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e (a). "Once within the

---

[10] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). "[F]ederal prisoners suing under <u>Bivens</u> [ ], must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." <u>Id.</u> (internal citation omitted). Thus, exhaustion through administrative remedies is clearly mandated by § 1997(e)(a) prior to seeking relief through suit pursuant to <u>Bivens</u>. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).

### C.     Actions Under the Federal Tort Claims Act (FTCA)

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of the negligent acts of agents of the United States. The United States cannot be sued in a tort action unless Congress has waived the government's sovereign immunity and authorized suit under the FTCA. <u>Dalehite v. United States</u>, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b) and 2671-2680.

In 2021, the Supreme Court issued a decision which summarized the historical precedent which led to the enactment of the FTCA:

> The FTCA streamlined litigation for parties injured by federal employees acting within the scope of their employment. Before 1946, a plaintiff could sue a federal employee directly for damages, but sovereign immunity barred suits against the United States, even if a similarly situated private employer would be liable under principles of vicarious liability. Despite that immunity, the Government often would provide counsel to defendant employees or indemnify them. In addition, Congress passed private bills that awarded compensation to persons injured by Government employees. But by the 1940s, Congress was considering hundreds of

such private bills each year. Critics worried about the speed and fairness with which Congress disposed of these claims.

In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment. The Act in effect ended the private bill system by transferring most tort claims to the federal courts. Plaintiffs were (and are) required to bring claims under the FTCA in federal district court. Federal courts have jurisdiction over these claims if they are actionable under § 1346(b). A claim is actionable if it alleges the six elements of § 1346(b), which are that the claim be:

[1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[11]

Brownback v. King, 141 S. Ct. 740, 746 (2021) (cleaned up and internal citations omitted).

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). The FTCA provides at § 2674 as follows:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

---

[11] 28 U.S.C. § 1346(b)(1) provides, "[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

However, the FTCA does not create a new cause of action. <u>Medina v. United States</u>, 259 F.3d 220, 223 (4th Cir. 2001). "The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." <u>Id.</u>

Even where the government has waived sovereign immunity, the FTCA only authorizes lawsuits against the United States itself. 28 U.S.C. § 1346(b). Therefore, the United States, not any government employee or agency, is the only proper defendant in an FTCA lawsuit. <u>See</u> 28U.S.C. 2679(a); <u>Webb v. Hamidullah</u>, 281 F. App'x 159, 161 n. 4 (4th Cir. 2008) (per curiam) (unpublished) (United States is the only proper defendant in FTCA claim); <u>Holmes v. Eddy</u>, 341 F.2d 477, 480 (4th Cir. 1965) (per curiam) (federal agency cannot be sued pursuant to the FTCA); <u>Allfgeir v. U.S.</u>, 909 F.2d 869 (6th Cir. 1990) ("The FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee").

A constitutional civil rights claim is not cognizable in an FTCA lawsuit. <u>FDIC v. Myer</u>, 510 U.S. 471, 477-79 (noting that a constitutional tort claim is not cognizable in an FTCA lawsuit because the United States has not waived its sovereign immunity with respect to constitutional tort allegations); <u>Blanchard v. United States</u>, No. 2:14-CV-58, 2015 WL 4107311, at 13 (N.D.W. Va. July 7, 2015), <u>aff'd</u> 622 F. App'x 287 (4th Cir. 2015) (per curiam) (unpublished) (finding that a civil rights claim alleging a violation of the Eighth Amendment prohibition against cruel and unusual punishment is not actionable against the United States in an FTCA lawsuit because a constitutional tort claim is not cognizable under the FTCA).

A number of statutory exceptions apply to the Federal Tort Claims Act, including

an exception for any discretionary function, or for any damages related to establishment

of a quarantine:

> The provisions of this chapter and section 1346(b) of this title shall not apply to--
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
>
> . . . .
>
> (f) Any claim for damages caused by the imposition or establishment of a quarantine by the United States.

28 U.S.C.A. § 2680.

The first step in the FTCA process is an administrative filing under 28 U.S.C. § 2675(a):

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or admission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of the claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. 2675(a). Under 28 U.S.C. 2401, the claim must be filed within two years of

the occurrence.

To maintain an FTCA case, it is a jurisdictional requirement that the plaintiff in such a case must first file and exhaust an administrative claim prior to filing suit. See 28 U.S.C. § 2675(a) ("An action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing. . ."); see also Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir.1986)) ("The Act also requires that before an action may be commenced in court, the claimant must 'present' his claim to the appropriate administrative agency for determination. . . . 'the requirement of filing an administrative claim is jurisdictional and may not be waived.' "); Est. of Van Emburgh by & through Van Emburgh v. United States, 95 F.4th 795, 803 (4th Cir. 2024) (we "hold that § 2675 is the sole source of jurisdictional requirements for the FTCA's administrative exhaustion requirement"); Kokotis v. U.S. Postal Serv., 223 F.3d 275, 278 (4th Cir. 2000) ("Precisely because the FTCA constitutes a waiver of sovereign immunity, plaintiffs . . . must file an FTCA action in careful compliance with its terms");

The BOP has adopted a Program Statement which explains, clearly and in detail, the procedure by which inmates may recover monetary damages for personal injuries and/or damage to or loss of property sustained while in custody. Program Statement 1320.06 ("Federal Tort Claims Act"), Paragraph 7 ("Filing a Claim") describes the procedure for obtaining a Standard Form ("SF-95") and filing a claim. Among the items required on the SF-95 is a "sum certain" (i.e., a specific amount of money). This information is mandatory, as the United States Court of Appeals for the Fourth Circuit

explained in <u>Kokotis v. U.S. Postal Serv</u>., 223 F.3d 275, 278 (4th Cir. 2000) (citations

omitted):

> An administrative claim must be properly presented. The
> FTCA's implementing regulations consider a claim to be
> properly presented when the government receives a
> completed SF 95 (or other written notification of an incident),
> and "a claim for money damages in a sum certain ..." 28
> CFR § 14.2(a) (1999) (emphasis added); see also 39 CFR §
> 912.5(a) (1999). Requesting a sum certain is a necessary
> element of any FTCA administrative claim. Failure to request
> a sum certain within the statute of limitation deprives a
> district court of jurisdiction over a subsequently filed FTCA
> suit.
>
> Because the FTCA is a waiver of sovereign immunity,
> careful compliance with procedural requirements -- such as
> filing of the administrative claim—is not only mandatory but
> is also a "jurisdictional and may not be waived." <u>Henderson
> v. United States</u>, 785 Fed second 121, 123 (4th Cir. 1986);
> see also <u>Kielwein v. United States</u>, 540 F.2d 676, 679 (4th
> Cir. 1976). Consequently, this court lacks jurisdiction to hear
> an FTCA claim in the instant action because it is clear on the
> face of his pleading, that the plaintiff has not complied with
> the strict provisions of the FTCA requiring that an
> administrative claim first be filed with the appropriate Federal
> agency before commencement of a civil action in the district
> court. <u>See</u> 28 CFR § 14.2; and the 'SF-95.'

### D.    Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a

complaint fails to state a claim upon which relief can be granted. The Federal Rules of

Civil Procedure require only, "'a short and plain statement of the claim showing that the

pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim

is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544,

555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited,

"the accepted rule that a complaint should not be dismissed for failure to state a claim

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff's complaint was filed *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus,

a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### E.    Motions for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a

genuine issue of material fact." 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed.

Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.    ANALYSIS

The Plaintiff initiated this case on April 7, 2023, under the Federal Tort Claims Act seeking monetary compensation for the loss of his personal property. The Plaintiff's complaint asserts that the Government is responsible for his loss of personal property because the Government's agents at the BOP were negligent when they failed to protect the Plaintiff's personal property from other inmates. The complaint alleges that the Plaintiff suffered a loss of $2,500.00 based on the theft of his personal property by a fellow inmate, and that the Plaintiff's preexisting heart problem and high blood pressure were exacerbated from the stress of his loss of property. The Plaintiff did not seek a monetary recovery for his alleged worsened health problems.

### A.    Failure to Exhaust as to Claims of Physical Injury

To the extent that the Plaintiff asserts a claim for physical injuries, he is not entitled to relief, because he failed to exhaust his administrative remedies on this issue prior to filing the instant complaint. Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions. Failure to exhaust may only be excused upon a showing of cause and

20

prejudice." McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir.2001), Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981)). Exhaustion as provided in § 1997e(a) is mandatory, regardless of the relief offered through administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741). "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524. Further, the requirement of exhaustion for claims raised under the Federal Tort Claims Act is explicitly stated in 28 U.S.C. § 2675 (a).

In a footnote in its memorandum in support of the Motion to Dismiss, or Alternatively, for Summary Judgment, the Defendant argues, "Defendant acknowledges that Plaintiff's Complaint references stress and heightened strain to his medical conditions as the result of the alleged theft of his property; however, these allegations were not included in Plaintiff's SF-95 and therefore were not administratively exhausted." ECF No. 22-1 at 2, n. 1.

The Plaintiff has not claimed any excuse for his failure to exhaust his administrative remedies related to his claims of physical injury. Rather, in his complaint filed on April 7, 2023, he states that he had not yet received an answer for his Claim numbered TRT-MXR-2023-03010 filed "around Feb[ruary] 2023." ECF No. 1 at 4. However, it does not appear that the Plaintiff ever raised any claim of physical injury in that claim. Rather, his sole claim "that an inmate stole [his] personal property" was denied on February 24, 2023. ECF No. 1-2 at 2. Further, in his Response to the Motion

to Dismiss filed October 27, 2023, the Plaintiff was silent as to his failure to exhaust any claim related to physical injuries. ECF No. 29.

As recognized in <u>Carmona</u>, <u>supra</u>, which was cited by the Fourth Circuit in its opinion in <u>McClung</u>:

> [T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the federal agency review process. Following the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds. In this sense, it is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same.
>
> Administrative autonomy is also served by requiring that a federal prisoner justify his failure to exhaust his intra-Bureau remedies. When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust.

<u>Carmona</u>, 243 F.3d at 634 (internal citations omitted). Accordingly,  exhaustion  of  any claim related to physical injury did not occur prior to the filing of this action.

The undersigned recognizes that the plaintiff is a pro se litigant, however his ignorance of the requirements of properly exhausting his administrative remedy for purposes of the FTCA is not a defense to dismissal. <u>See</u> <u>Adeleke v. United States</u>, 355 F.3d 144, 153 (2d Cir. 2004) (citing 28 U.S.C. § 2675(a)) ("a plaintiff must first file an administrative claim with the appropriate federal agency before suing for relief in federal court" and "this requirement applies equally to litigants with counsel as to those proceeding pro se.") Before filing this complaint, the Plaintiff failed to exhaust his

administrative remedies related to any claim for physical injury.

In Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 - 95 (1998), the Supreme Court wrote that "without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." See also Reinbold v. Evers, 187 F.3d 348, 359 n. 10 (4th Cir. 1999). Because this court lacks jurisdiction, this court cannot entertain the Plaintiff's request for compensation related to any physical injury, and any such claim should be dismissed without prejudice.

### B. Civil Rights Violations are Not Cognizable under the FTCA

The complaint couches its five claims for relief in language usually used in civil rights actions. The Plaintiff alleges that: (1) BOP employees *failed to protect him* from being robbed by another inmate [ECF No. 1 at 6 – 7]; (2) he was subject to *cruel and unusual punishment* which proximately caused the loss or theft of his personal property [Id. at 7–8]: (3) his *right to be free from discrimination* was violated [Id. at 9–10]; (4) BOP employees *willfully endangered and failed to protect him* from other inmates who then destroyed or stole his belongings [Id. at 10–11]; and (5) *failed to report misconduct* to BOP supervisors [Id. at 11–12]. However, to the extent that the Plaintiff's claims assert civil rights violations during his incarceration, such constitutional civil rights claims are not cognizable under the FTCA. FDIC v. Myer, 510 U.S. 471, 477–79; Blanchard v. United States, 2:14-CV-58, 2015 WL 4107311, at 13 (N.D.W. Va. July 7, 2015), aff'd 622 F.App'x 287 (4th Cir. 2015). Although the Plaintiff articulates his claims under language associated with civil rights claims, the remedy he seeks is compensation for

the personal property which he contends was stolen from him. Accordingly, to the extent that the Plaintiff asserts civil rights claims in this action, he is not entitled to relief under the FTCA, and those claims should be dismissed with prejudice.

**C.    The Plaintiff is Not Entitled to Relief Under the FTCA**

Although the Plaintiff initially filed an administrative remedy, then this action seeking relief under the Federal Tort Claims Act, he is ineligible for relief under the FTCA. Rather, the Plaintiff is eligible for consideration of his claim under the Small Claims Act, 31 U.S.C. § 3723. The BOP has a Program Statement, 5580.09, that addresses Inmate Property Claims for "[a]ll claims for damage to, or loss of, an inmate's privately owned property detained by staff should be processed under the Small Claims Act, 31 U.S.C. § 3723." ECF No. 28-1; See also https://www.bop.gov/policy/progstat/5580.09.pdf. Under Program Statement 5580.09, "Regional Counsel are delegated authority to consider, adjust, determine, compromise, settle, and pay inmate property claims filed under the Small Claims Act, 31 U.S.C. § 3723." Id. Further, pursuant to BOP Program Statement 5580.09 § 3.a., there are four requirements to file a claim under 31 U.S.C. § 3723: (1) The claim must be for damage to, or loss of, a current or former BOP inmate's privately owned property; (2) the loss must be caused by the negligence of an officer or employee of the U.S. Government acting within the scope of employment; (3) the claim must be submitted within 1 year after accrual; and (4) a claim may not be settled for more than $1,000.

Under the provisions of 31 U.S.C. § 3723, and BOP Program Statement 5580.09, the Plaintiff's request for monetary relief based on his claimed theft of property by a fellow inmate was properly considered under 31 U.S.C. § 3723. Although he failed to do

so before filing this action, during the pendency of this suit the Plaintiff sought relief under that section by filing form BP-A0943 "Small Claims for Property Damage or Loss (31 U.S.C. § 3723)," which he executed on October 19, 2023.[12] ECF No. 29-4. On February 12, 2024, the Plaintiff was advised in a denial letter from the Regional Counsel for the Mid-Atlantic Regional Office of the Bureau of Prisons that his claim, TRT-MXR-2024-00590, cannot be further appealed, and that he "there is no judicial review for claims decided pursuant to 31 U.S.C. § 3723." ECF No. 38-1 at 1. That lack of judicial review is set forth in Bureau of Prisons Program Statement 5580.09 § 4.f. which provides:

> Requests for Reconsideration. If a claim is denied or the claimant is dissatisfied with the settlement offer, the claimant may request, in writing, that the Bureau reconsider the claim. The request for reconsideration must be submitted within three months after the date of the decision letter to the appropriate Regional Office. The claimant should include additional evidence of injury or loss to support the request for reconsideration. There is no judicial review for claims decided under 31 U.S.C. § 3723.

ECF No. 28-1.[13]

The Plaintiff's claim that he is entitled under the Federal Tort Claims Act to damages of $2,500.00 for the loss of personal property is without merit and should be denied. Further, the Plaintiff's claim regarding his personal property has already been finally adjudicated by the Mid-Atlantic Regional Counsel, and pursuant to BOP Program Statement 5580.09 § 4.f., that determination is not reviewable by the Courts.

---

[12] Program Statement 5580.09 § 4.d. provides that, "If an inmate property claim is incorrectly filed under the FTCA instead of 31 U.S.C. § 3723, staff should deny the FTCA claim. However, staff can consider the claim under 31 U.S.C. § 3723 without the claimant filing another claim."

[13] The Plaintiff submitted a February 12, 2024, letter from the Mid-Atlantic Regional Counsel's office that confirms that the Plaintiff sought reconsideration of the denial of administrative settlement under 31 U.S.C. § 3723. ECF No. 38-1. That letter confirmed the continued denial of the Plaintiff's claim, and advised him that "there is no judicial review for claims decided pursuant to 31 U.S.C. § 3723." Id.

## V.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District

Court for the Northern District of West Virginia.

      DATED:     April 29, 2024

                     /s/ *Robert W. Trumble*
                     ROBERT W. TRUMBLE
                     UNITED STATES MAGISTRATE JUDGE